TUCKER, Judge.
The original plaintiff G.M.C. Tire Company brought suit to recover for the total loss of a 1967 34 ton truck, allegedly covered as # PCI 1458 in a policy of comprehensive insurance issued by Pan American Fire and Casualty Company, in 1968, in the amount of $2,500 with a $100 deductible. Pan American denied liability on the grounds that the truck in question “was a non-owned vehicle at the time this accident occurred.” In its answer Pan American also made a third party demand upon its agent, Harlan of Louisiana, Inc., for any and all sums for which it may be cast in judgment as a result of its allegedly unauthorized action in extending coverage under the policy on which suit was brought over and beyond its terms and conditions. Judgment was given in the trial court in favor of GMC against Pan American, and in favor of Pan American on its third party demand against Harlan of Louisiana. There were no written reasons for judgment.
Pan American has appealed from the judgment against it on the main demand alleging error by the court in permitting variance of the terms of the original agreement on the verbal authority of the agent, without any written endorsements. Pan American urges also that the doctrine of waiver and estoppel cannot be invoked to bring within the coverage of a policy of insurance risks not included nor contemplated by its terms.
Harlan, the third party defendant, has appealed on the following grounds of alleged error: (1) that the trial court erred apparently in holding that the 34 ton GMC truck was not covered because the description of the vehicle in the Schedtde of Automobile Coverages was not controlling as to coverage, or because there was no ambiguity between the Schedule of Automobile Coverages and the “Additional Definitions” subsection of the policy; (2) that the trial court apparently found that Pan American did not agree to issue a binder specifically providing coverage for the 34 ton GMC truck under the G.M.C. Tire Co. policy; and (3) that the trial court erred apparently in finding that Harlan acted outside the scope of its authority as agent for Pan American in binding Pan American on a risk outside the terms of the written policy issued to G.M.C. Tire Co.
The truck herein involved was first insured in a policy issued by Pan American to G.M.C. Tire Co. in 1968, and included as a described vehicle in the Schedule of Automobile Coverages. This policy was renewed, and the premiums paid for the renewal. The 34 ton truck was duly included in both original and renewal policies of comprehensive automobile insurance with Pan American. In both the original and the renewal policies a 1 ton GMC truck, #PC21768, was included, also. On October 8, 1969, the 1 ton truck was sold by G.M.C. Tire Co. to Johnny Winslow, and a letter was dispatched at the time by Harlan to Pan American requesting Pan American to “endorse the above captioned policy effective 10/8/69 deleting Entry #2 — a 1967 GMC 1 ton Truck M#PC21768.” Harlan also asked Pan American to issue a policy to Johnny Winslow covering the same vehicle, with G.M.C. Tire as an additional insured and a loss payable clause in favor of the Bank. On October 17, 1969, John O’Leary acting for Pan American, wrote to Harlan advising it that Pan American “cannot issue coverage on the 1967 GMC for Mr. John Winslow.” This letter did not acknowledge, however, the request to delete the 1 ton truck from the G.M.C. Tire Co.’s policy.
Meanwhile the 34 ton truck was sold under a lease-purchase agreement to Johnny Winslow, also, on April 6, 1970. To facilitate the purchase of the truck Winslow borrowed money, giving a mortgage for the loan to the Bank of Terrebonne and Trust Co., in Houma, La., which requested not only a mortgage on the truck, but also GMC’s endorsement of the note. In the presence of the GMC Tire Company’s *165 president, the bank officer handling the transaction telephoned Dwayne Tracy of Harlan of Louisiana, Inc., Pan American’s agent, to obtain a verbal binder providing collision insurance on the truck with the Bank of Terrebonne as the loss payee to the amount of its interest under the mortgage. Mr. Tracy obliged, testifying that he had obtained a verbal binder in turn from John O’Leary of Pan American. On that same day the bank collected a premium of $167.00, which it added to the amount of Winslow’s loan, and forwarded that day to Harlan, Pan American’s agent. This premium has never been returned; nor has any request for its return been made. On April 29, 1970, the ¿4 ton truck was involved in a collision and became a total loss. Pan American denied coverage of the vehicle, and also any obligation to the Bank since it was not shown as the Mortgagee on the policy. The Bank of Terrebonne and Trust Co. demanded and obtained payment on the mortgage note from GMC Tire Co. Then GMC, as the named insured sued for the maximum under the policy, or $2,400 after the $100 deductible, plus interest, attorney fees, and penalties. Alternatively GMC Tire Co. alleged that it was a third-party beneficiary of the loss payee coverage insuring the Bank of Terrebonne and Trust Co. as the holder of the mortgage on the truck.
Although the trial judge did not favor us with any reasons for judgment, written or oral, we conclude that he found coverage within the terms of the policy and awarded judgment to plaintiff accordingly. We concur in his judgment for the reason that we find that the evidence preponderates in establishing coverage of the destroyed vehicle by Pan American.
When asked about his conversation with John O'Leary of Pan American, Tracy of Pan American’s agent Harlan stated, “I contacted Pan American Insurance Company, Mr. John O’Leary and requested that he provide coverage for this unit in the name of Johnny Winslow which he agreed at that particular time to do under a binder situation.” Tracy further testified that after the conversation with O’Leary in which “he did say it would be bound due to the nature of the way the truck was going to be used with GMC Tire”, a few days later O’Leary called back to say that Pan American would not write the policy in Winslow’s name. At that time, Tracy said fine, “but the coverage has to be provided whether it be Winslow or GMC Tire”, because “it’s used for GMC Tire’s business”, to which O’Leary answered “that will be satisfactory to leave it on the policy under GMC Tire’s policy.”
O’Leary denied issuing a binder to Tracy covering the J4 Ton GMC under the GMC Tire policy, relying solely on the fact that there was no notation of such a conversation in his file. Tracy, on the other hand, did testify as to a memo in his file reminding himself to send a memo to Pan American on GMC Tire regarding the incentive “which was talked about with Mr. O’Leary on the phone”, and for which “GMC will provide all coverage for all coverage for liability PD and comprehensive on these merits.”
There was no communication between Harlan and Pan American on this coverage other than verbal conversation. The only indication that the conversations did not take place between Tracy and O’Leary was the absence of any telephone memorandum and the fact that a written binder was not issued by Pan American. The only telephone memorandum in the Pan American file on the GMC Tire policy was in connection with the sale of the 1 Ton GMC in October, 1969. In fact, O’Leary never actually denied or admitted the conversation with Tracy as to the ¿4 Ton GMC, but merely denied issuing an oral binder. On the other hand, Tracy stated affirmatively that he did talk with O’Leary about the ¿4 Ton GMC on two separate occasions, and that O’Leary agreed to bind coverage under the GMC Tire policy.
*166 Mr. Tracy testified further, as follows:
“Q. In any and all events when the telephone call was received from the Bank of Terrebonne (made at the time of the mortgage and sale transaction) and it was known in your agency that the title was being transferred to Johnny Winslow, the Bank of Terre-bonne was covered as of that moment on the loss payable clause.
A. Yes, sir.
Q. And did as far as you know, did Ranger Pan American know of that coverage before the accident ?
A. They were informed of it by request to issue a loss payable to the Bank of Terrebonne which they proscrastinated in doing from the Houston office.
Q. But you sent to them .
A. A copy of the one that I had sent to the Bank of Terrebonne.
Q. A copy of the request to issue?
A. Yes, sir.
Q. That was done before the accident?
A. Yes, sir.
Q. And you as agent for Pan American had the authority to cover the loss payable, to issue the loss payable coverage ?
A. Yes, sir.
Q. And there was no question with Pan American vested in you that authority, isn’t that true?
A. Yes, sir.
* * * * * *
Q. I’ll go another step and ask the question. If you issue a loss payable coverage and sent notification to your principal and they don’t immediately wire you that that coverage is unacceptable, you certainly would rely that that coverage is bound not only through your office but by Pan American as well ?
A. Yes, sir. That is the way that it is operated and the way that the procedure goes.
Q. Now, how soon after the title transfer took place at the Bank of Terre-bonne did you notify the Pan American of the loss payable coverage?
A. Immediately upon the bank’s request that I needed the endorsement issued.
Q. Would you say within forty-eight hours ?
A. Yes, sir.
Q. And did you ever receive any indication from the Pan American that they would not honor that loss payable request ?
A. No, sir. None whatsoever. They finally honored it.
Q. Now, in between the time that they did write a letter and say they honored your binding of this, in between the time that you called them within forty-eight hours after the title transfer and the time that you received the indication that they were going to honor that particular request did they give any indication that they would not?
A. No, sir.”
As indicated by Mr. Tracy’s testimony quoted above, Pan American knew of the coverage even before the accident, due to Tracy’s request to make the Bank the loss payee. Since Pan American did not say the coverage was unacceptable, Mr. Tracy relied on the fact that the coverage was bound not only through Harlan, but also through Pan American. It should be noted, moreover, that on May 19, 1970, a Memorandum of Automobile Insurance and Loss Payable Clause was issued on the GMC Tire policy naming the Bank as the *167 mortgagee and specifically listing the % ton GMC. The Loss Payable Clause was signed by Mr. Tracy of Harlan, who, even by the testimony of Mr. O’Leary clearly had the authority as agent for Pan American to issue such a clause.
Also persuasive is the fact that on February 17, 1971, Pan American conducted an audit of the GMC Tire policy for the period December 4, 1969 through December 4, 1970, and in regard to automobiles stated, “Entry #1-67 GMC Ton Ser. #PC11458 should be eliminated 4/23/70 which was the date it was a total loss in a wreck.” There was no mention that this truck had been sold, only that it should be eliminated as wrecked. In the previous year’s audit the 1 ton truck, mentioned earlier, had been included although sold to Johnny Winslow. Again in the 1971 audit the 1 ton truck was included with no notation that it should be deleted as sold. This action by the auditor, unless he completely overlooked the records, indicates Pan American intended and agreed to bind coverage on these vehicles, even though they were no longer owned by GMC Tire Co.
As stated previously, it is obvious that the trial court found coverage for the ¿4 ton truck within the insurance policy issued to GMC by Pan American, and there is ample evidence to substantiate this finding. At no time did plaintiff make any allegations or arguments based upon an attempt to reform or vary the terms and conditions of the contract of insurance between the two main parties, neither in its original petition, or in its answer as an ap-pellee. At no time has plaintiff set up any arguments based upon the doctrines of waiver and estoppel. We see no reason, therefore, to answer the appellant’s arguments on these grounds and prefer to base our judgment upon a finding of coverage within the terms of the insurance policy issued by Pan American to GMC Tire Co. For reasons set forth about, we affirm the judgment of the trial court in favor of the' plaintiff on the main demand.
In view of our finding of insurance coverage within the terms of the policy Pan American’s third party demand against Harlan of Louisiana, Inc., must fall. Coverage being found, as here, there is no showing that Pan American’s agent exceeded his authority. In view of this holding we do not find it necessary to discuss the first two grounds of error suggested by Harlan on appeal. If Harlan had attempted to bind Pan American without its knowledge or consent, such action might have precluded recovery from Pan American; but, in that case, a cause of action would have been created in favor of GMC Tire Co. against Harlan. We see no grounds for Pan American’s third party demand against Harlan. Accordingly, we reverse the trial court’s judgment on the third party demand and dismiss its suit against Harlan of Louisiana, Inc. The defendant-appellant, Pan American Fire and Casualty Company, is cast for all costs of these proceedings.
Judgment affirmed in part; reversed in part.